# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **FRANK LIGHT, JR.** <br> **Plaintiff,** <br> v. <br> **OTIS BLAIR,** *et al.*, <br> **Defendants.** | **CIVIL ACTION NO. 19-5107** |

## MEMORANDUM OPINION

**Rufe, J.**                                                                                                          **October 23, 2020**

Plaintiff Frank Light, Jr., a former police officer, has filed suit against Defendants City of Chester and its police commissioner Otis Blair and mayor Thaddeus Kirkland alleging sex and religious discrimination under the Equal Protection Clause and 42 U.S.C. § 1983 and discrimination and retaliation under Title VII of the Civil Rights Act.[1] Defendants have moved to dismiss the Amended Complaint; for the reasons set forth below, the motion will be granted in part and denied in part.[2]

---

[1] 42 U.S.C. § 2000e *et seq.*

[2] In Plaintiff's Response in Opposition to Defendants' Motion to Dismiss, Plaintiff has withdrawn the hostile work environment claim, claims for punitive damages against Defendant City of Chester, and all official-capacity claims against Defendants Blair and Kirkland. Pl. Resp. Opp. Mot. to Dismiss [Doc. No. 23] at 21–22. These claims will be dismissed as withdrawn.

I. **BACKGROUND**[3]

Plaintiff identifies as pansexual and practices gender nonconformity.[4] For example, Plaintiff enjoys wearing feminine clothing and makeup on occasion. Plaintiff is also Buddhist and practices certain Wiccan traditions. Both are closely held religious beliefs.

In July 2018, Plaintiff wore a dress and eyeliner into the police station. Plaintiff changed out of his civilian clothes into his police uniform but did not remove the eyeliner. Plaintiff alleges that he was directed, on the orders of Defendant Blair, to remove his makeup at once; which he did. Plaintiff alleges that female officers are permitted to wear civilian clothes such as dresses to work and are permitted to wear facial makeup on duty.

On October 30, 2018, Plaintiff, practicing closely held religious beliefs, wore to work a Henna tattoo of certain Wiccan runes on his head and hands.[5] Plaintiff alleges that he was sent home on Defendant Blair's orders and was told "not to report for work until the temporary religious symbols were removed."[6] Plaintiff states that although he informed his superiors that the markings were religious symbols, he was issued a written reprimand from Defendant Blair and ordered "to write a memorandum explaining his actions" before he could return to work.[7] Plaintiff additionally alleges that other officers have appeared at work displaying temporary

---

[3] The facts set forth in this Memorandum are taken from the Amended Complaint [Doc. No. 15] and assumed true for purposes of the motion to dismiss.

[4] Plaintiff identifies as male and Plaintiff's counsel uses male pronouns for Plaintiff in the briefing. *See* Amend. Compl. [Doc. No. 15] ¶ 13; Pl. Resp. Opp. Mot. to Dismiss [Doc. No. 23] at 6. The Court will therefore adopt Plaintiff's use of male pronouns.

[5] Henna refers to a traditional dye that is used on skin and generally lasts one to three weeks. *See* https://en.wikipedia.org/wiki/Henna.

[6] Amend. Compl. [Doc. No 15] ¶ 22.

[7] *Id.* ¶ 23.

religious symbols on their body—the symbol of the cross on their foreheads on Ash Wednesday—without receiving any discipline.

On January 1, 2019, Plaintiff was arrested for suspected DUI. On January 3, 2019, Plaintiff was placed on administrative leave. On January 14th, Plaintiff received a hearing and was suspended from duty without pay the next day, pending the conclusion of the DUI charges. On May 15, 2019, Plaintiff was admitted into the Accelerated Rehabilitative Disposition program and received a sixty-day suspension of his driver's license and six months of probation.[8]

On February 14, 2019, Plaintiff filed a charge with the Pennsylvania Human Relations Commission and the EEOC alleging sex and religious discrimination.[9] He received a right to sue letter from the EEOC on September 9th and filed this action on October 31st, asserting claims based on his suspension. On December 4, 2019, the City reconvened the disciplinary hearing, and on December 7th, Plaintiff's employment was terminated. Plaintiff filed an Amended Complaint to encompass his termination and add claims for retaliation.

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10] The question is not whether the plaintiff ultimately will prevail but

---

[8] The Pennsylvania ARD program targets first time offenders charged with minor crimes that appear receptive to treatment and rehabilitation. Under the program, a criminal defendant is not convicted of the crime and upon successful completement of a probationary period, will receive an expungement of his arrest record. *See Gilles v. Davis*, 427 F.3d 197, 209 & n.9 (3d Cir. 2005); *see also* Pa. R.Crim. P. 300 *et seq.* There are no facts pled as to when or if Plaintiff successfully completed the ARD program.

[9] *See* Ex. A to Amend. Compl. [Doc. No. 15-1, Ex. A].

[10] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)); *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

whether the complaint is "sufficient to cross the federal court's threshold."[11] In evaluating a challenged complaint, a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[12] However, the Court "need not accept as true 'unsupported conclusions and unwarranted inferences'"[13] or "legal conclusions."[14]

### III. DISCUSSION

#### A. Claims under § 1983 and Title VII for Gender and Religious Discrimination

Plaintiff brings claims of sex and religious discrimination under Title VII and the Equal Protection Clause through § 1983, alleging that his suspension and termination were motivated—at least in part—by discrimination. Title VII and equal protection claims for employment discrimination use the *McDonnell Douglas* framework.[15] To assert a *prima facie* case, Plaintiff must allege "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination."[16]

---

[11] *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citations omitted).

[12] *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (quotation marks omitted).

[13] *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000) (quoting *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 n.13 (3d Cir. 1998)).

[14] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997) (quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 628 (1st Cir. 1996)) (internal quotations omitted).

[15] *See Keenan v. City of Philadelphia*, 983 F.2d 459, 465 (3d Cir. 1992) ("[B]ecause of the overlap between Title VII claims and constitutional discrimination claims, [the Third Circuit has] applied Title VII caselaw to equal protection claims."); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[16] *Mercado v. Donahoe*, 487 F. App'x 15, 17 (3d Cir. 2012) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002); *see also Stewart v. Rutgers*, 120 F.3d 426, 431–32 (analyzing §1983 claims for discrimination under the *McDonnell Douglas* framework). The parties did not address the *McDonnell Douglas* framework in their briefings on this Motion to Dismiss.

Plaintiff has alleged that he is a member of a protected group, was qualified as a police officer, and that his suspension and termination were adverse employment actions.

Plaintiff has also alleged facts to support an inference of discrimination. Plaintiff alleges that Defendant Blair made comments relating to his gender nonconformity and Henna tattoos in both the January 14th hearing and the December 4th hearing.[17] Plaintiff further alleges that Defendant Kirkland "considered numerous violations in [Plaintiff's] record of not confirming [sic] to the dress code of the Police Department" when making his decision to terminate Plaintiff.[18]

Plaintiff also alleges that the City of Chester has not terminated numerous other officers who have pled guilty and/or been convicted of driving under the influence, citing two officers in the last three years who received no disciplinary action.[19] In fact, Plaintiff states that one of these officers was promoted a year after his DUI offense.[20] Plaintiff further alleges that other officers who had lost the privilege to carry a firearm were given special assignments in the police station pending the return of their privileges.[21] These allegations are sufficient to support an inference of discrimination and state a claim under Title VII and § 1983.

---

[17] *See* Amend. Compl. [Doc. No 15] ¶ 41 (alleging that Defendant Blair "stated before the panel that Plaintiff's gender nonconformity, specifically wearing a dress, was an 'embarrassment' and a 'disgrace' to the City of Chester's Police Department" at the January 14 hearing); *Id.* ¶ 44 (alleging that Defendant Blair "again raised the issues of Plaintiff's gender nonconformity and the Henna tattoos of certain Wiccan runes, with a recommendation that Plaintiff be terminated as a result thereof" at the December 4 hearing).

[18] *Id.* ¶ 45.

[19] *Id.* ¶¶ 33–35.

[20] *Id.* ¶ 34.

[21] *Id.* ¶ 36.

Defendants, instead of addressing the *prima facie* case, focus on the circumstances of Plaintiff's suspension and termination.[22] To the extent that this may be construed as an argument that there was a legitimate reason for the termination, the allegations of disparate treatment and of discriminatory remarks are sufficient to state a claim that the reliance on the DUI conviction was pretextual.[23]

### B. Retaliation Claims under Title VII

Defendants argue that Plaintiff has failed to state a retaliation claim under Title VII.[24] In order to state a claim for retaliation, a plaintiff must show "(1) [that she engaged in] protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action."[25] Defendants argue that because Plaintiff's suspension occurred before the EEOC complaint was filed and the timing of Plaintiff's dismissal was based on the conclusion of the criminal DUI matter, the second and third prongs are not met.[26] But Plaintiff's termination was an adverse action which occurred after Plaintiff filed his

---

[22] *See* Defs.' Mem. Supp. Mot. to Dismiss [Doc. No. 17] at 19. Defendants seem to misconstrue Plaintiff's equal protection claims as procedural due process claims, Defs.' Mem. Supp. Mot. to Dismiss [Doc. No. 17] at 6.

[23] Defendants also argue that Plaintiff "may not rely on §1983 to remedy violations of [Title VII]." Defs.' Mem. Supp. Mot. to Dismiss [Doc. No. 17] at 15 n.4 (citing *Williams v. Pa. Human Relations Comm'n*, 870 F.3d 294, 299 (3d Cir. 2017)). Defendants are correct that a § 1983 claim may not be brought based solely on a violation of Title VII. However, a plaintiff may bring concurrent § 1983 and Title VII claims supported by the same underlying facts. *See Hamilton v. City of Philadelphia*, No. 18-05184, 2019 WL 4220899, at *4 (E.D. Pa. Sept. 5, 2019) (explaining that *Williams* forecloses only "pure Title VII claim[s]," i.e., claims brought under § 1983 that assert only a violation of Title VII).

[24] *See* Defs.' Mem. Supp. Mot. to Dismiss [Doc. No. 17] at 21–22.

[25] *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 193 (3d Cir. 2015) (alteration in original) (quoting *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir.2007)).

[26] Defs.' Rep. Supp. Mot. to Dismiss [Doc. No. 25] at 4.

EEOC charge and this case.[27] Although Defendants argue that the dismissal was unrelated to the EEOC charge and this case, the Court must construe the complaint "in the light most favorable to the plaintiff."[28] As such, the temporal proximity of the events is "unusually suggestive" and may support a causal link.[29] At this stage, Plaintiff's allegations are sufficient to state a claim for retaliation.

### C. *Monell* Claim Against the City of Chester

Defendants argue that Plaintiff has failed to state a claim against the City of Chester[30] because Plaintiff has made no allegation of any custom or policy which caused the alleged deprivation of constitutional rights.[31] However, "[i]f the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government 'policy' as that term is commonly understood."[32] Therefore, it is possible that "a policy or custom may be inferred where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself."[33]

---

[27] *See LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007) (termination is clearly an adverse action). Defendants were aware of Plaintiff's charges with the EEOC no later than September 9, 2019, and this action no later than November 26, 2019; Plaintiff was terminated on December 7, 2019. Amend. Compl. ¶¶ 45, 71, 73.

[28] *Phillips*, 515 F.3d at 233.

[29] *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. 2007), *as amended* (Aug. 28, 2007) ("[A]n 'unusually suggestive' proximity in time between the protected activity and the adverse action may be sufficient, on its own, to establish the requisite causal connection.").

[30] Plaintiff brings claims against City of Chester under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).

[31] *See* Defs.' Mem. Supp. Mot. to Dismiss [Doc. No. 17] at 13.

[32] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986).

[33] *Buoniconti v. City of Philadelphia*, 148 F. Supp. 3d 425, 438 (E.D. Pa. 2015) (citations and quotations omitted).

In the Amended Complaint, Plaintiff merely asserts that Defendant Blair, as police commissioner, and Defendant Kirkland, as mayor, are the "City of Chester's final decision makers" and that their actions constitute adopted policies.[34] This conclusory statement is insufficient to meet the pleading standard. Plaintiff's *Monell* claim will be dismissed without prejudice.[35]

### D. Individual Liability of Defendants Blair and Kirkland

Defendants argue that the individual-capacity claims against Defendants Blair and Kirkland should be dismissed because they are "redundant" given that Plaintiff alleges Defendants Blair and Kirkland were acting in their official capacities.[36] But "[s]tate officials, sued in their individual capacities are 'persons' within the meaning of § 1983 and are not absolutely immune from personal liability thereunder solely by virtue of the 'official' nature of their acts."[37] Plaintiff may bring claims against Defendants Blair and Kirkland in their individual capacity.

Defendants further argue that the claims against Defendants Blair and Kirkland should be dismissed under the doctrine of qualified immunity.[38] Qualified immunity shields government officials from liability for civil damages when their conduct "does not violate clearly established

---

[34] Amend. Compl. [Doc. No. 15] ¶ 60.

[35] *See Phillips*, 515 F.3d at 228 (3d Cir. 2008) ("[I]n the event a complaint fails to state a claim, unless amendment would be futile, the District Court must give a plaintiff the opportunity to amend her complaint.").

[36] *See* Defs.' Mem. Supp. Mot. to Dismiss [Doc. No. 17] at 8–9 & n.3.

[37] *Halstead v. Motorcycle Safety Found. Inc.*, 71 F. Supp. 2d 464, 473 (E.D. Pa. 1999) (citing *Hafer v. Melo*, 502 U.S. 21, 31 (1991)); *see also Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009) ("[Section] 1983 equal protection claims may be brought against individuals."); *Williams*, 870 F.3d at 299 (noting that Title VII exposes only "*employers*" to liability, while § 1983 permits suits directed at "*individuals*" like the plaintiff's supervisors).

[38] Defs.' Mem. Supp. Mot. to Dismiss [Doc. No. 17] at 9–10.

statutory or constitutional rights of which a reasonable person would have known."[39] But as of 2018, the time of the allegations, it was well-established law that public employers were not permitted to treat their employees differently on the basis of sex or religion.[40] Additionally, it would be premature to dismiss under qualified immunity before the claims and defenses have been developed through discovery.[41]

### IV.  CONCLUSION

Defendants' Motion to Dismiss will be granted in part and denied in part. An order will be entered.

---

[39] *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[40] *See e.g. Andrews v. City of Philadelphia*, 895 F.2d 1469, 1479 (3d Cir. 1990) ("The general right which the jury found them to have violated, the right to be free of discrimination based upon sex in the workplace, was well grounded in law and widely known to the public by 1986."); *Middleton v. Deblasis*, 844 F. Supp. 2d 556, 569 (E.D. Pa. 2011).

[41] *See Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009) ("[I]t is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases.").